UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LINDA E. KASKO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-243-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AETNA LIFE INSURANCE COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of Plaintiff Linda E. Kasko's ("Kasko") motion to compel discovery regarding whether a conflict of interest influenced Defendant Aetna Life Insurance Company's ("Aetna") decision to deny her claim for long-term disability ("LTD") benefits. [Record No. 15] Having reviewed the briefs filed in support of the parties' respective positions, the Court will grant a portion of the relief sought.

## I.

Kasko was covered through her former employer, InVentiv Health, under a group LTD plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Kasko claims that she was disabled and stopped working on July 9, 2011. [Record No. 1, p. 3] As a result, she filed a claim for LTD benefits with Aetna. The claim was denied. In addition to providing LTD coverage to InVentiv, Aetna administers the plan.

Kasko filed this action on July 31, 2013, alleging that the decision to deny her claim for LTD benefits was arbitrary, capricious and not supported by substantial evidence. She further asserts that "the decision to deny LTD benefits was under a perpetual conflict of interest because the benefits

would have been paid out of its own funds." [Record No. 1, ¶27] Kasko also contends that the decision to deny her claim for LTD benefits was influenced by the reviewing doctors' conflicts of interest. [Record No. 25, p. 4]

On January 24, 2014, Kasko served the defendant with seven interrogatories and five requests for production of documents. Aetna objected to a number of the discovery requests. Thereafter, Kasko moved the Court to compel Aetna to respond. [Record No. 14] The discovery subject to Aetna's objections and Kasko's motion concerns a potential conflict and bias of doctors hired by Aetna to review Kasko's benefits claim. [Record No. 15]

## II.

### A. Discovery Outside the Administrative Record

Generally, an ERISA claimant may not seek discovery regarding matters outside the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (noting that a district court may not ordinarily consider new evidence). This is based on two governing principles. First, the reviewing court's determination is not whether a claimant is eligible for benefits, but rather whether the administrator's decision was proper, based on the administrative record. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990) (holding that under either "de novo" or "arbitrary and capricious" standard, court's review is limited to the record). Second, limitations regarding discovery furthers ERISA's primary goal; that is, the inexpensive and expeditious resolution of disputes. *Id.* at 966-67.

However, when a claimant makes a procedural challenge to an administrator's decision, such as a challenge based on bias, limited discovery may be appropriate. *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (citation omitted). In such a case, the first rationale is inapplicable and the court may look outside the administrative record to fully consider the

circumstances affecting the administrator's alleged conflict. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). For the same reason, however, discovery must be strictly confined to the procedural challenge. *Johnson*, 324 F. App'x at 466; *Moore v. LaFayette Life Ins*. Co., 458 F.3d 416, 430 (6th Cir. 2006). Moreover, the second rationale for prohibiting discovery remains applicable. As a result, any discovery which is permitted must be tailored to facilitate the prompt resolution of the dispute. *See Price v. Hartford Life and Acc. Ins. Co.*, 746 F. Supp. 2d 860, 865-66 (E.D. Mich. Oct. 12, 2010) (courts should account for the "interests of economy, efficiency, accuracy, and fairness" when addressing scope of discovery issues).

In *Glenn*, the Supreme Court held that there is an inherent conflict of interest whenever a plan administrator evaluates and pays benefits on claims. *Glenn*, 554 U.S. at 117. However, the Court discouraged special procedural or evidentiary rules for analyzing a potential conflict of interest. *Id.* ("Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict."). The Sixth Circuit has interpreted this holding to mean that threshold evidentiary showings are not required for discovery in ERISA cases. *Johnson*, 324 F. App'x at 466. But that does not necessarily mean that discovery is available every time the defendant is both the evaluator and payor under a benefits plan. *Id.* Rather, the district court must determine whether discovery is appropriate to further a colorable procedural challenge. *Id.* In *Johnson*, the Sixth Circuit found that the district court did not abuse its discretion by permitting discovery regarding an alleged conflict of interest where the plaintiff offered more than a mere allegation of bias. *Id.* More recently, it held that discovery may be appropriate in determining the weight to give a conflict of interest. Notwithstanding these determinations, the district court still possesses discretion to

determine whether discovery should be allowed. *Bell v. Ameritech Sickness & Acc. Disability Ben. Plan*, 399 F. App'x 991, 998 (6th Cir. 2010).

After *Johnson*, courts have taken several approaches concerning requests for discovery outside the administrative record. Some have found that discovery regarding claims of bias is appropriate when the only showing of bias is the allegation of an inherent conflict of interest, as defined in *Glenn*.[1] *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-86-JBC, 2009 WL 89696, at *2 (E.D. Ky. Jan. 13, 2009); *see also Cramer v. Appalachian Reg'l Healthcare, Inc.*, No. 5:11-49-KKC, 2012 WL 996583, at *2 (E.D. Ky. Mar. 23, 2012); *Busch v. Hartford Life & Accident Ins. Co.*, No. 5:10-111-KKC, 2010 WL 3842367, at *3 (E.D. Ky. Sept. 27, 2010). These courts reason that the act of denying discovery until there has been an initial showing of bias "essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery." *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009). These courts find that the Supreme Court's instruction that "it does not 'believe it is necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict,'" renders the inherent conflict sufficient to allow limited discovery. *Busch*, 2010 WL 3842367, at *2 (quoting *Glenn*, 554 U.S. at 106). In short, some courts – including judges within this district – have found discovery permissible due to the inherent administrator/payor conflict of interest. *See O'Bryan v. Consol Energy, Inc.*, No. 08-11, 2009 WL 383401 (E.D. Ky. Feb. 11, 2009) (holding that a plaintiff is required to show that the discovery he seeks would lead to a finding that the denial was arbitrary

---

[1] This is sometimes referred to as the "mere allegation" approach.

and capricious by demonstrating that the decision raises questions of fairness, but the inherent conflict of interest alone meets this showing).

Conversely, other courts have required more than a mere showing of an inherent administrator/payor conflict. *Donovan v. Hartford Life & Acc. Ins. Co.*, No. 1:10-2627-PAG, 2011 WL 1344252, at *2 (N.D. Ohio Apr. 8, 2011); *see also Geer v. Hartford Life & Acc. Ins. Co.*, No. 08-12837-DAS, 2009 WL 1620402, at *5 (E.D. Mich. June 9, 2009) ("discovery should be allowed where a plaintiff has provided sufficient initial facts suggesting a likelihood that probative evidence of bias or procedural deprivation would be developed."). These courts have found that an allegation of bias alone is insufficient. Instead, a plaintiff must make a sufficient factual showing to expand discovery beyond the administrative record. Similarly, another court within this circuit has developed a two-step process under which a plaintiff may obtain discovery on the sole issue of whether the defendant or the individuals participating in the review of the plaintiff's claim have any financial interest in the outcome of the claim. *Clark v. Am. Elec. Power Sys. Long Term Disability Plan*, 871 F. Supp. 2d 655, 662 (W.D. Ky. 2012). [2] Under this approach, if the plaintiff shows some evidence of a conflict exists at the first step, he or she will be allowed to obtain further discovery. *Id*. But regardless of the approach utilized, all courts allow discovery in cases in which a plaintiff makes a further showing of potential bias past the inherent conflict of interest claim. *Sundermeyer v. Ohio Educ. Ass'n*, No. 2:12-CV-959, 2013 WL 3147952, at *3 (S.D. Ohio June 19, 2013) ("the Court concludes that Plaintiff has made the barest of an additional showing of potential bias here"); *Cummins v. Liberty Life Assur. Co. of Boston*, No. 2:10-CV-00108, 2010 WL 4809269, at *4 (S.D.

_____

[2] This is sometimes described as a "heightened requirement" approach.

Ohio Nov. 19, 2010) (permitting discovery when the plaintiff shows evidence of a financial relationship between the defendant and medical experts).

In the present case, Kasko has made a sufficient showing of potential bias to permit further discovery. More specifically, she has offered proof that approximately 85% to 90% of the claims Dr. Mendelssohn has reviewed have been recommended "not disabled." [Record No. 15-3, pp. 17-18] Further, Dr. Mendelssohn has be criticized by other courts for the content and frequency of reviews she makes for Aetna. *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 506 (6th Cir. 2008); *see also Stephens v. Aetna Life Ins. Co.*, No. 1:11-CV-513, 2012 WL 2711378, at *9 (S.D. Ohio July 9, 2012); *Neubert v. Life Ins. Co. of N. Am.*, No. 5:10CV1972, 2012 WL 776992, at *17 (N.D. Ohio Mar. 8, 2012) (collecting cases). This additional information is sufficient to justify discovery outside the administrative record.

## B.     Scope of Discovery

While some discovery will be allowed, the scope of discovery is still at issue. Generally, courts have allowed discovery regarding whether: (i) there is a history of biased claim denials; (ii) the employer has made measures to reduce bias and promote accuracy; and (iii) company policies reward or encourage denials. *Raney v. Life Ins. Co. of N. Am.*, No. 08-169-JMH, 2009 WL 1044891, at *3 (E.D. Ky. Apr. 20, 2009) (citation omitted). More specifically, courts have permitted discovery regarding:

> (1)     "Incentive, bonus, or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims," *Myers v. Prudential Ins. Co. of America*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

> (2)     Contractual connections between the administrator and the reviewers utilized in the plaintiff's claim, and financial payments paid annually to the reviewers from the administrator. *Pemberton*, 2009 WL 89696 at *3.

(3)     "Statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

(4)     "Statistical data concerning the number of times the reviewers found claimants able to work in at least a sedentary occupation or found that the claimants were not disabled." *Id.*

(5)     "Documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claim)."

*Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504, 513 (W.D. Ky. 2010) (citing *McQueen*, 595 F. Supp. 2d at 755–56).

This Court has previously determined that a request concerning the number of claims reviewed was not proper because it would not assist in demonstrating whether there is support in the administrative record for a determination of that particular plaintiff's claim. *Hulst v. Aetna Life Ins. Co.*, No. 5:12-344-DCR, 2013 WL 5675513, at *3 (E.D. Ky. Oct. 17, 2013). However, in *Hulst*, discovery was denied because there was no proof of relevance to the claim. Here, Kasko has sufficiently demonstrated the type of evidence she seeks to discover and the possible relevance of that evidence in proving the bias she alleges. [*See* Record No. 15.] Further, the denial in *Hulst* was based on the fact that the sole number of reviews made by a reviewing doctor was not relevant to the matter before the Court. Kasko has gone beyond that assertion. As a result, the rationale in *Hulst* does not preclude Kasko from seeking discovery outside of the administrative record in this case.

### 1.     Interrogatories

Interrogatory Five seeks information regarding payments to doctors who reviewed Kasko's claim between 2010 and 2012. [Record No. 15-2, p. 4] Aetna has already provided the amount of payments made to Kasko's reviewing doctors. [*Id.*] Therefore, it contends that any further discovery

regarding this issue would be inappropriate. [Record No. 17, p. 8] However, courts have permitted discovery concerning the amount of annual payments made by an administrator to reviewing third-parties. *Busch*, 2010 WL 3842367, at *4. This information could show long-term financial incentives influencing doctors hired to review claims for Aetna. Further, the amount paid for only reviewing Kasko's claim could be insufficient to demonstrate this type of bias. Thus, while the amount charged in reviewing Kasko's claim is a permissible area of inquiry, the historical and annual payments are proper areas of discovery.

Interrogatory Four requests information regarding the number of times between 2010 and 2012 each doctor that reviewed Kasko's claim reviewed a claim on behalf of Aetna and whether they were contracted directly by Aetna or by a third-party. [Record No. 15-2, p. 3] Interrogatory Seven seeks information regarding the number of files reviewed by doctors that reviewed Kasko's claim between 2010 and 2012. It also requests that Aetna provide the number of files in which those doctors found a claimant able to work in at least a sedentary position or otherwise not disabled. [Record No. 15-2, p. 5] These requests seek statistical data from Aetna in an attempt to show a history of biased claim administration. These interrogatories closely mirror discovery requests that have been found permissible in this district. *Pemberton*, 2009 WL 89696 at *3.

Aetna argues that complying with these requests would be unduly burdensome because the physicians do not determine whether a claim should be denied. Instead, they merely assist the claim department in understanding the medical aspects of the claim. [Record No. 17, pp. 6-7] As a result, Aetna asserts that producing the discovery requested would require a manual review of every report to determine the outcome of the claim. [*Id.*] Regardless, this type of statistical information has been found to be discoverable in investigating a claim of bias. Indeed, "if [Aetna] relied on the third-party reviewers whose opinions or reports may have been unduly influenced by financial

incentives, the Court would benefit from information revealing the compensation arrangements in place." *Crider v. Life Ins. Co. of N. Am.*, No. 3:07CV331-H, 2008 WL 239659, at *6 (W.D. Ky. Jan. 29, 2008). The financial incentives, combined with the physicians' recommendations, could assist the Court in resolving an allegation of biased claim administration.

The Court also notes that Kasko is only requesting this information for a three-year period. In fact, similar discovery has been found to be sufficiently narrow when it is limited to reviewing doctors for ten-year period. *Pemberton*, 2009 WL 89696 at *4. Again, however, according to Aetna's representations, these physicians do not technically find a claimant disabled. Thus, Aetna claims, they do not maintain an index of whether a physician made an actual disability finding. [Record No. 17, p. 7] Discovery regarding the number of times a physician rendered a finding of "disabled" would not be possible. Based on these representations, the defendant's response to Interrogatory Seven will be limited to the number of files in which the physicians *recommended* a finding of sedentary work or otherwise not disabled. As a result, the motion to compel will be granted concerning the interrogatories, but will be subject to this modification.

### 2. Requests for Production of Documents

Request for Production Two asks Aetna to provide all contracts or agreements between Aetna and the doctors that reviewed Kasko's claim. [Record No. 15-2, p. 6] Request for Production Four asks Aetna to produce records of invoices or bills sent by the doctors that reviewed Kasko's claim between 2010 and 2012. [Record No. 15-2, p. 6] Request for Production Five asks Aetna to provide the records of payments between 2010 and 2012 made by Aetna to the doctors that reviewed Kasko's claim. [Record No. 15-2, p. 7] These requests seek information concerning the financial and contractual relationships between the reviewing physicians and Aetna. This type of discovery

request has also been allowed as a "permissible area of inquiry." *Pemberton*, 2009 WL 89696 at *3. However, Aetna asserts that this information falls outside of the scope permitted in an ERISA case.

The Court has discussed the resulting changes to discovery following the *Glenn* decision. This type of discovery will allow inquiry into possible financial incentives underlying the reviewing physicians' recommendations. As a result, the motion to compel will be granted concerning these requests for production. However, disclosure of this information will be limited.

## C.    Protective Order

Aetna argues that if the Court does permit limited discovery, it should also issue a protective order to avoid disclosure and dissemination of confidential information, which includes proprietary, confidential, and private information of certain individuals who are not parties to this litigation. [Record No. 17, p. 1] Kasko argues that a protective order should not be permitted because: (i) Aetna did not make a proper motion for a protective order; (ii) it has not given good cause for the protection of the information to be provided; and (iii) dissemination of the type of evidence at issue would promote the interests of justice. [Record No. 18, p. 7]

Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure permits a district court to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only a specified way." If this type of information is found relevant, then appropriate measures should be taken concerning its disclosure by a protective order. *R.C. Olmstead, Inc., v. CU Interface*, LLC, 606 F.3d 262, 269 (6th Cir. 2010) (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir.1981). Courts possess substantial discretion in granting protective orders. *Textured Yarn Co. v. Burkart-Schier Chem. Co.*, 41 F.R.D. 158, 160 (E.D. Tenn. 1966).

As discussed above, the financial arrangements and contracts between Aetna and the reviewing physicians are relevant to Kasko's claim and subject to discovery. However, due to the privacy interests of non-parties, this discovery will be limited. The financial arrangements between Aetna and the reviewing physicians implicates Aetna's business practices. Thus, the production of such information could be harmful to Aetna in that it could be potentially reviewed by competitors and duplicated. Additionally, the reviewing physicians are not parties to the suit, but rather individuals with legitimate privacy concerns. The possible harm of these disclosures demonstrates sufficient good cause. The Court also finds that the potential damage of the widespread dissemination this information outweighs the public interest in disclosure. Further, Kasko has not demonstrated that she would be harmed by a protective order allowing her access to the information sought, while also protecting Aetna and the non-party individuals from its dissemination to third parties.

The Court will permit discovery on this information but will limit its review to counsel and experts. Kasko may not to disclose or exchange this information with anyone not associated with this case. Further, Kasko should not use this information for any other purpose other than litigating the instant lawsuit. The confidential review of the requested discovery will allow Kasko to develop her claim of bias while preventing the harmful and widespread disclosure of the private information of non-parties and other confidential business arrangements as requested by Aetna.

### III.

Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Linda E. Kasko's motion to compel [Record No. 15] is **GRANTED**, subject to the limitations outlined above.

2.     Defendant Aetna Life Insurance Company's request for a protective order [Record No. 17, p. 1] is **GRANTED** as outlined above.

3.     The Scheduling Order [Record No. 10] is **SET ASIDE**.  The parties shall file a revised, proposed scheduling order within twenty (20) days of this date.

This 21st day of July, 2014.

Signed By:

_**Danny C. Reeves**_

**United States District Judge**